In the United States District Court for the
Northern District of Illinois, Eastern Division

Cindy M. Whelan,

        Plaintiff,

        vs.                     No.:

Lt. Erik Mackowiak, Sgt. John Kowalski,
Deputy Kyle Halverson, Deputy Chief Kelly
Jackson, Chief Joseph Bellettiere, Thomas Dart,
Sheriff of Cook County, Cook County Sheriff's
Dept. and Cook County, Illinois,

        Defendants.

<u>First Amended Complaint</u>

Cindy M. Whelan complains as follows:

<u>Nature of the Action</u>

1.     This is a multiple count action charging defendants, Thomas Dart, Sheriff of Cook

County, Cook County Sheriff's Dept., and Cook County, Illinois with violations of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.* as amended by the Civil Rights Act of

1991, by maintaining a hostile work environment (Count I) and retaliating against the plaintiff

for complaining about gender discrimination, maltreatment, and harassment (Count II); an action

charging defendants Thomas Dart, Sheriff of Cook County, defendants Mackowiak, Kowalski,

Halverson, Jackson, and Bellettiere with violating plaintiff's rights under 42 U.S.C. § 1983 as

guaranteed under the Fourteenth Amendment (Count III); an action charging defendants

Mackowiak, Kowalski, Halverson, Jackson and Bellettiere with conspiring to violate plaintiff's

rights under 42 U.S.C. § 1983 as guaranteed under the Fourteenth Amendment (Count IV); an

action charging defendants Jackson, Bellettiere, Mackowiak, Kowalski, and Halverson for

1

**EXHIBIT**

A

violations of Illinois law for the intentional infliction of emotional distress (Count V); and an action under Illinois law charging Cook County, Illinois with statutory indemnity for the payment of damages caused by local government employees while acting in the course of their employment pursuant to 745 ILCS 10/9-102 (Count VI).

<u>Jurisdiction and Venue</u>

2.      This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.* as amended by the Civil Rights Act of 1991 and 42 U.S.C. § 1983.   Jurisdiction over this action exists in this Court pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

3.      Whelan filed charges of sex discrimination and retaliation with the EEOC on September 25th, 2015 and the EEOC issued a right to sue letter on April 4th, 2016. (*See* Ex.1, 2, attached).

4.      Venue in this action lies in the Northern District of Illinois and is proper in this district under 28 U.S.C. § 1391(a) and (b) because the parties all reside in this district and the unlawful conduct alleged herein occurred and continues to occur in this district.

<u>Parties</u>

5.      Plaintiff  Cindy M. Whelan ("Whelan") is a resident of the City of Chicago, Cook County, Illinois. She began working for Cook County, Illinois in the Cook County Sheriff's Department as a deputy sheriff on April 19th, 2004 and has remained so employed at all relevant times since.  Whelan was promoted to Sergeant on September 11th, 2011 and is a sworn law enforcement officer.  Whelan has taken the Lieutenants promotion exam on two (2) occasions

and has passed it both times. She most recently took and passed the exam in October of 2015 and is currently on the list as eligible for selection for promotion to Lieutenant.

6.     Sergeant Whelan first sat for and passed the Lieutenants exam on or about October of 2013 and was listed as eligible for selection to promotion to Lieutenant when she first reported to the sheriff's Civil Process Unit ("CPU") located in Bridgeview, Illinois on/about July 13th, 2014. Whelan commenced work as a Sergeant in the CPU which was subsequently moved from Bridgeview and relocated to Markham, Illinois in September 2014. Whelan's day to day duties as a Sergeant were to supervise deputy sheriffs in the performance of their daily duties, which included, but were not limited to, the service of various civil process documents in the districts to which Whelan was assigned. Additionally, Sergeant Whelan was responsible for overseeing and executing the substantial administrative office work required for the efficient operation of the Civil Processing Unit.

7.     Defendant Cook County, Illinois ("Cook County") is an Illinois corporation and body politic.

8.     Defendant Cook County Sheriff's Department ("Sheriff's Dept.") is a part of Cook County.

9.     Defendant Thomas Dart, Cook County Sheriff ("Sheriff of Cook County" or "Sheriff") is a constitutional officer, an elected official, and an employer of defendants Mackowiak, Kowalski, Halverson, Jackson and Bellettiere. He is sued in his official capacity.

10.     At all times material hereto defendant Lieutenant Erik Mackowiak ("Mackowiak") was a sworn law enforcement officer serving as the senior officer in charge of the Bridgeview (then Markham) Civil Process Unit and employed by the Sheriff and Cook

3

County with the rank of Lieutenant. At all times material hereto, defendant Mackowiak was acting under color of state law. Mackowiak is sued individually.

11.     At all times material hereto, defendant Sergeant John Kowalski ("Kowalski") was a sworn law enforcement officer serving as a sergeant assigned to the Markham Civil Process Unit and employed by the Sheriff and Cook County with the rank of Sergeant. At all times material hereto, defendant Kowalski was acting under color of state law. Kowalski is sued individually.

12.     At all times material hereto, defendant Deputy Kyle Halverson ("Halverson") was a sworn law enforcement officer serving as a deputy sheriff assigned to the Markham Civil Process Unit and employed by the Sheriff and Cook County with the rank of Deputy. At all times material hereto, defendant Halverson was acting under color of state law. Halverson is sued individually.

13.     At all times material hereto, defendant Deputy Chief Kelly Jackson ("Jackson") was a sworn law enforcement officer serving as Deputy Chief of the Civil Division for the Cook County Sheriff's Department assigned to the Daley Center and employed by the Sheriff and Cook County with the rank of Deputy Chief. At all times material hereto, defendant Jackson was acting under color of state law. Jackson is sued individually.

14.     At all times material hereto, defendant Chief Joseph Bellettiere ("Bellettiere") was a sworn law enforcement officer serving as Chief of the Civil Division for the Cook County Sheriff's Department assigned to the Daley Center and employed by the Sheriff and Cook County with the rank of Chief. At all times material hereto, defendant Bellettiere was acting under color of state law. Bellettiere is sued individually.

Factual Allegations

15.     On a continuing and ongoing basis since on or about July 13th, 2014 through the present, Whelan has been subjected to repeated, pervasive, ongoing and relentless gender discrimination, harassment, and retaliation, including, but not limited to, repeated derogatory and demeaning remarks due to her gender, unsubstantiated and erroneous accusations of professional incompetence, intentional undermining of her authority as a female Sergeant supervisor, intentional obstruction and sabotage of the performance of her professional duties by her supervisor defendant Lieutenant Mackowiak with the intent of preventing Whelan from being able to accomplish her professional duties and responsibilities, denial of overtime pay for the same work which was granted to her male peers, and has been the victim of groundless Summary Punishment Action Requests (SPAR) issued by Mackowiak to obstruct Whelan's selection for promotion to Lieutenant and to instigate Whelan's removal from the civil processing unit.  Defendant Mackowiak repeatedly targeted Whelan, the only female Sergeant assigned to the Markham CPU, for repeated verbal harassment and abuse, routinely spreading false rumors about Whelan's incompetence and repeatedly using profane language and yelling and screaming at Whelan in front of her peers, subordinates, and civilian employees in order to get Whelan removed from the CPU or force her out of the unit by intimidation and harassment. Mackowiak, Kowalski and Halverson repeatedly ignored and refused to answer Sgt. Whelan's work related phone calls in an effort to hinder her performance and obstruct her ability to complete her daily civil process assignments. Mackowiak later began to systematically isolate Whelan from the unit by avoiding direct communication with her and physically barring her from his office which humiliated Whelan and undermined her ability to effectively perform the duties of her leadership position as a Sergeant. Furthermore, Mackowiak and Kowalski

repeatedly ordered Halverson and other subordinate personnel not to assist Whelan in the performance of her daily duties while instructing these same subordinate personnel to continue to assist the male Sergeants at the CPU.

16.    Additionally, Whelan was subject to further degrading, embarrassing, and disparate treatment because of her gender, including being the only Sergeant told to remain silent at the daily Sergeants meeting, and subsequently being physically excluded altogether from these daily leadership meetings. Said meetings were conducted by defendant Lieutenant Mackowiak and all male sergeants were allowed to attend, speak, and offer suggestions and information at these daily meetings.

17.    All of the aforementioned actions created a hostile work environment and were unwelcome, offensive, demeaning, and discriminatory acts done in retaliation of Whelan's protests against the disparate and demeaning treatment she received because of her gender.

<u>Sex Discrimination and Sexual Harassment – Hostile Work Environment</u>

18.    Since beginning work at the Sheriff's Civil Process Unit in Bridgeview, Illinois in July 2014 and continuing after the Unit was relocated to Markham, Illinois in September 2014, Whelan has been subjected to an offensive course of verbal harassment and gender discrimination by her defendant co-workers and supervisors.   Offensive and demeaning treatment, verbal harassment, and gender discrimination at the hands of Whelan's co-workers and supervisors was ongoing, repeated, and pervasive.   These unlawful acts against Whelan continued to occur through September of 2015, despite Whelan filing a complaint in July 2015 with the Sheriff's Office of Professional Review ("OPR"), and her filing of a charge with the EEOC in September 2015. (*See* Ex. 1, attached).

19.     The gender discrimination, verbal harassment, and offensive and demeaning conduct that the defendants engaged in created and resulted in a hostile work environment for Whelan. This behavior occurred frequently, if not daily, and included, but was not limited to, the following:

A.   Supervisor defendant Lieutenant Mackowiak  repeatedly made angry, profane, disrespectful,  and demeaning comments  to and about Sergeant Whelan in front of her male Sergeant peers, subordinate deputy sheriff personnel,  and civilian office staff in an attempt to intentionally  humiliate, embarrass, demean, isolate and undermine Whelan,  repeatedly yelling, screaming, swearing, and making insulting comments about her poor performance of administrative duties, falsely accusing her of only being  "an office Sergeant" and lacking the personal and professional courage to "go on the street," consistently admonishing her in an angry, loud, disrespectful and public manner  to "be quiet," "stop interrupting me," "stop huffing,"  "stop overreacting," and other words to that effect;

B.   Supervisor defendant Lieutenant Mackowiak, defendant Sergeant Kowalski, and defendant deputy Halverson intentionally treated Sergeant Whelan differently than her male co-workers as they repeatedly and intentionally failed to assist her in the organization of and timely service of her daily assigned civil process documentation in order to intentionally obstruct Whelan's ability to perform her daily duties to justify poor performance evaluations and written discipline requests  in order to hinder and obstruct her ability to be promoted to the rank of Lieutenant and drive her out of the Civil Process Unit;

C.   Supervisor defendant Lieutenant Mackowiak, defendant Sergeant Kowalski, and defendant deputy Halverson repeatedly ordered, instructed, and suggested to other sheriff's personnel that they not help or assist Sergeant Whelan in the organization of and timely service of civil process documentation in order to intentionally obstruct Whelan's ability to perform her daily duties and thereby justify poor performance evaluations and written discipline requests issued in order to hinder and obstruct her ability to be promoted to the rank of Lieutenant and drive her out of the Civil Process Unit;

D.   Supervisor defendant Lieutenant Mackowiak, defendant Sergeant Kowalski, and defendant deputy Halverson intentionally treated Sergeant Whelan differently than her male co-worker peers as she was repeatedly and intentionally instructed in a disrespectful manner not to speak or offer comments and recommendations at defendant Lieutenant Mackowiak's daily sergeants meetings, which were attended by the male Sergeants assigned to the Civil Process Unit, who were permitted  to speak and offer comments and recommendations at said meetings.

E.  Supervisor defendant Lieutenant Mackowiak, defendant Sergeant Kowalski, and defendant deputy Halverson repeatedly and intentionally treated Sergeant Whelan differently than male sheriff's personnel, as they would intentionally ignore and not answer her work related radio calls and phone calls seeking assistance and guidance in the daily performance of her duties, while routinely answering and responding to the radio calls and phone calls from male sheriff's personnel.  This was done in order to obstruct Whelan's ability to perform her daily duties and thereby justify poor performance evaluations and written discipline requests issued in order to hinder and obstruct her ability to be promoted to the rank of Lieutenant and drive her out of the Civil Process Unit;

F.  On or about September 2014, Supervisor defendant Lieutenant Mackowiak intentionally treated Sergeant Whelan differently than her male Sergeant peer and shift partner, as Whelan was denied overtime pay for assisting her partner in completing essential tasks for approximately 2 hours in excess of their daily duty shift. Mackowiak approved the male Sergeant peer's overtime request while refusing to grant Whelan's request, despite the fact that Whelan worked the exact same overtime hours on the same date and time with said male Sergeant; and

G.  Supervisor defendant Lieutenant Mackowiak made inappropriate and disrespectful sexual comments to Whelan about not calling him with work related questions during his off duty evening hours because Whelan was always interrupting his sexual acts with his wife.

20.     The demeaning and intentionally disrespectful remarks were repeatedly made in front of male sergeant peers, subordinate deputy sheriff personnel, and civilian clerical and janitorial staff, and defendants Mackowiak, Kowalski, and Halverson would actually shake their heads, smirk, and laugh when Whelan protested that her treatment was not only completely unprofessional, but also unfair, demeaning, and humiliating.  Defendants Mackowiak, Kowalski, and Halverson not only made no effort to cease harassing Whelan, they participated in it and encouraged subordinate personnel to continue to obstruct Whelan by not assisting her in carrying out daily administrative and logistical tasks associated with organizing and prioritizing the various documents required for the timely service  of civil process documentation.

21.     Whelan demanded that the yelling, swearing, disrespectful comments, demeaning tone and tenor of Mackowiak's verbal abuse, discriminatory treatment, public humiliations,

disrespectful treatment at the daily Sergeant meetings, and the ongoing obstruction of her daily duties be stopped. She told her co-workers and her supervisors repeatedly that their conduct was unwelcome, unprofessional, and to stop it. Whelan also complained about Mackowiak's and Kowalski and Halverson's behavior personally to them, her union representative, and to their superiors in the Civil Process Division, including Deputy Chief Jackson and Chief Bellettiere.

22.     Instead of acting on her complaints and instead of ceasing the demeaning treatment, discrimination, and harassment, Mackowiak, Kowalski, and Halverson continued to insult, abuse, and isolate Whelan, continuing to admonish her to be quiet at the daily Sergeant meetings, intentionally obstructing her ability to perform her daily administrative duties and service of civil process documentation, and continued to harass, ridicule, belittle, and humiliate Whelan in front of her peers and subordinates because of her gender.

23.     On or about March 4th, 2015 Mackowiak, intentionally initiated a written request for formal discipline against Whelan by submitting a Summary Punishment Action Request ("SPAR") for a fabricated allegation that Whelan had not responded to radio calls in a timely manner. Several of Whelan's fellow male sergeants routinely failed to answer radio calls in a timely manner, but Whelan, because of her gender, was the only sergeant written up for the offense. Mackowiak submitted this groundless SPAR to his superiors to intentionally hinder and obstruct her ability to be selected for promotion to Lieutenant and drive her out of the Civil Process Unit.

24.     Whelan eventually became fed up with this maltreatment and filed a formal complaint against Mackowiak, Kowalski, and Halverson with the Cook County Sheriff's Office of Professional Review ("OPR") on or about July 17th, 2015.

<u>Continuing Discrimination, Harassment and Retaliation</u>

25.     After Whelan filed her OPR complaint on July 17th, 2015, defendants Lieutenant Mackowiak, Sergeant Kowalski, and Deputy Halverson were not reassigned but were allowed to continue working at the Markham Civil Process Unit.  Lieutenant Mackowiak, despite the fact that Whelan had formally accused him of discrimination and harassment, was allowed to remain in his position as Officer in Charge of the CPU with continuing supervisory authority over Whelan.  Neither Deputy Chief Jackson nor Chief Bellettiere took any action whatsoever to remove or temporarily reassign Mackowiak away from his command position over Whelan during the pendency of the OPR investigation.

26.     After Whelan filed her OPR complaint, defendants Mackowiak, Kowalski, and Halverson made it clear that the harassment and discrimination directed at Whelan would not only continue, but they effectively encouraged Whelan's peers and subordinates to engage in and continue the same discrimination and harassment by continuing to isolate, insult, and publicly humiliate Whelan.  Not only was Whelan's' complaint ignored, the already escalated and inappropriate level of harassment intensified, as did the retaliation for having made her complaint to OPR public and in writing.

27.     After Makowiak gained knowledge of the formal OPR complaint filed against him by Whelan on or about July 13th 2015,  he retaliated against her by completely excluding Whelan from the daily sergeant meetings, continued to falsely accuse her of only being an "office sergeant" who was afraid to "go out on the street,"  continued to ignore her requests for assistance and guidance, continued to order subordinate personnel not to assist Whelan in organizing her document "bundles,"  failed to assist her in the timely service of the assigned civil process documentation, and continued to publicly ridicule Whelan with repeated condescending

and demeaning comments made in the presence of male peers, subordinate sheriff's personnel, and civilian office staff.

28.     Mackowiak, Kowalski, and Halverson also continued to verbally harass and discriminate against Whelan after she filed her OPR complaint against them on July 13th, 2015.

29.     Mackowiak made Whelan's complaint public knowledge in the CPU, which violated the Deprtment's policies, by telling the other officers that Whelan had filed a complaint based upon "favoritism" and that, as a result, he could no longer be as flexible in permitting days off, thus attempting to turn the other officer in the CPU against her.

30.     Also, shortly after Whelan filed her complaint Mackowiak announced that if anyone had any complaints against Whelan they should put them in writing and bring them to Mackowiak.  As a result, various employees sent brief "To/From" memos to Mackowiak with trivial complaints against Whelan many of which had purportedly occurred months earlier.

31.     On information and belief, Mackowiak, Kowalski, and Halverson publicly displayed a sign directly over Whelan's work desk referring to the 7th floor of the Daley Center as "deputy jail" in a continuing attempt to humiliate and demean her in front of her male sergeant peers and subordinate sheriff's personnel as it was common knowledge that sheriff's personnel who were formally under investigation for misconduct or dereliction of duty would be reassigned to the 7th floor of the Daley Center while awaiting formal adjudication of their charges and imposition of discipline, suspension, or termination from the Sheriff's department.

32.     Mackowiak, after learning of Whelan's OPR complaint against him, also physically barred Whelan from entering his office to attend the daily Sergeants meetings and would only meet with the male sergeants in order to pass his daily orders and instructions. Sgt. Whelan was again publicly humiliated, demeaned, and isolated from her male Sergeant peers by

Mackowiak's action as she, the only female Sergeant assigned to the Markham Civil Process unit, was forced to remain outside Lt. Mackowiak's office with the rest of the subordinate personnel and office staff during these daily sergeant meetings and would only receive the daily orders and instructions from a male co-worker after Lieutenant Mackowiak's daily sergeant's meeting had concluded. Mackowiak was told to exclude Whelan from Sergeants meetings by Bellettiere.

33.     On or about August 5th, 2015 there was a Sheriff's Department County wide equipment inspection that Lieutenant Mackowiak was first made aware of due to his position as the officer in Charge of the Markham CPU. On information and belief, Mackowiak, Kowalski, and Halverson, after learning of the required equipment inspection, removed the OC spray and the ASP from Whelan's duty belt in retaliation for Whelan's OPR complaint. Mackowiak then intentionally called for the CPU equipment inspection to be conducted and subsequently initiated an investigation against Whelan, falsely accusing her of commandeering a subordinate's OC spray to pass the inspection.

34.     On information and belief, Mackowiak subsequently contacted Whelan's superiors in the chain of command, defendants Deputy Chief Jackson and Chief Bellettiere, in order to incorrectly inform them that Whelan had used a subordinate's OC Spray and ASP during the equipment inspection. Mackowiak initiated this investigation in retaliation against Whelan for her OPR complaint and in order to intentionally hinder and obstruct her ability to be selected for promotion to Lieutenant and drive her out of the Civil Process Unit.

35.     On or about August 10th, 2015, after Mackowiak reported Whelan utilized the OC Spray and ASP of a subordinate during the equipment inspection, Defendants Deputy Chief Jackson and Chief Bellettiere ordered Sergeant Whelan to report to them immediately at the

Daley Center in order to be interviewed. Whelan repeatedly asked Jackson and Bellettiere what the subject of the interview would be and asked whether she should bring her union representative in case the question related to a subject matter which could lead to discipline. Defendants Jackson and Bellettiere repeatedly told Whelan that the interview would not require her union representative and that they simply wanted to discuss her situation at the Markham CPU.

36.     Whelan immediately reported to defendants Deputy Chief Jackson and Chief Bellettiere and was subjected to aggressive questioning as to whether she had not had her OC Spray and ASP on her duty belt as required by Sheriff's equipment rules and regulations. The intense questioning also involved accusations as to whether Sgt. Whelan had ordered a subordinate deputy sheriff to give up her OC Spray so that Whelan would have the required equipment on her duty belt during Mackowiak's inspection. Defendants Deputy Chief Jackson and Chief Bellettiere initiated this aggressive questioning of Whelan after being contacted by Mackowiak and in continuing retaliation against Whelan for her OPR complaint in order to intentionally hinder and obstruct her ability to be selected for promotion to Lieutenant and drive her out of the Civil Process Unit. It was not unusual for Sgts./Officers to have a piece of equipment missing at an inspection, but no one had ever been subjected to an interrogation as a result.

37.     After Whelan filed her OPR complaint, Mackowiak, Kowalski, Halverson, Jackson, and Bellettiere engaged in the following forms of retaliation:

> A. Completely excluded Whelan from daily sergeant meetings attended by her male peers;
>
> B. Intentionally placed a sign over Whelan's work desk referring to the 7th floor of the Daley Center as "deputy jail" in a continuing attempt to

humiliate and demean her in front of her male sergeant peers, subordinate sheriff's personnel, and civilian clerical and janitorial staff personnel;

C. Continued to yell and scream at Whelan in an angry and demeaning tone and used profanities in front of co-workers in a continuing attempt to humiliate and demean her in front of her male sergeant peers, subordinate sheriff's personnel, and civilian clerical and janitorial staff personnel;

D. Attempted to obstruct Whelan's ability to have her union representative present at a mandated interview ordered and conducted by Deputy Chief Jackson and Chief Bellettiere at the Sheriff's headquarters in the Daley Center to investigate an allegation against Whelan for commandeering a subordinate's OC spray to pass the inspection, an alleged offense which could have resulted in the imposition of formal discipline. Conduct of said questioning in the absence of union representation would have been in violation of the collective bargaining agreement;

E. On or about August 31st, 2015, defendant Lieutenant Mackowiak intentionally failed to return Whelan's multiple radio calls from the field requesting assistance and guidance on the appropriate procedures to be followed with regard to handling a minor at home alone complaint in order to ensure that the subject complaint was addressed by Whelan in accordance with Illinois law and the applicable Sheriff's Departmental internal policies and procedures, despite the fact that Mackowiak would return radio calls requesting assistance and guidance from male sheriff's personnel; and

F. On or about September 1st, 2015, Mackowiak ordered Whelan to report to his office where he questioned and publicly criticized Whelan on her handling of the 31 August 2015 Minor at Home Alone complaint in the presence of sheriff Lieutenant Baker in a continuing attempt to humiliate and demean her in front of her male sergeant peers, subordinate sheriff's personnel, and senior supervisory officers.

38.     On about September 23rd, 2015 Whelan filed an EEOC charge of discrimination against the Cook County Sheriff's Dept., alleging that her supervisors and co-workers had discriminated against her because of her gender, and harassed her on a repeated and continuous basis, creating a hostile work environment. (*See* Ex. 1, attached). That harassment suffered by Whelan only increased since the filing of a charge with the EEOC.  On April 4th, 2016, the

EEOC issued a 'Right to Sue Letter' that Whelan received in the US Mail on or about April 7th, 2016.

39.     After Whelan filed her formal complaint against Mackowiak, Kowalski and Halverson in July of 2015, she remained assigned to the CPU in Markham.  Whelan continued to work with Kowalski and Halverson and under the direct supervision of Mackowiak, despite the stated policy of the Cook County Sheriff's Department to separate employees from their harassers once the department has notice of the harassment.

40.     After Whelan filed her EEOC charge in September of 2015 she continued to work with Kowalski and Halverson and under the direct supervision of Mackowiak, despite the stated policy of the Cook County Sheriff's Department to separate employees from their harassers once the department has notice of the harassment.

41.     In December of 2015, upon information and belief, at the request of Bellettiere, Mackowiak was transferred to the Daley Center in order to assist Bellettiere.  Mackowiak, however, continued to maintain an office in Markham.  In April of 2016 Whelan was transferred to the Daley Center where both Bellettiere and Mackowiak were assigned.

42.     Whelan initially worked under Chief Sadjek at the Daley Center, but shortly after Whelan's transfer to the Daley Center she was again reassigned to Chief Bellettiere.

43.     Whelan's transfer to the Daley Center lengthened her travel time to and from work.  Whelan did not want to be transferred to the Daley Center but accepted the transfer because the Union President, Sgt. Wakefield, told her that if she did not accept the transfer her partner, Sgt. Soto, would be transferred.  Because she trusted and depended upon Sgt. Soto to help shield her from retaliation, she reluctantly accepted the transfer.  In Markham Whelan was

among the highest in seniority, which advantaged her in vacation picks, and at the Daley Center she was among the lowest in seniority.

44. In or about April 21, 2017 Bellettiere directed Mackowiak to pick up an expired I.D. from Lt. Marunde, a task which could have been handled by a clerk. Bellettiere and Mackowiak knew that Whelan officed in the same area as Lt. Marunde, and that this task would put Mackowiak in direct contact with Whelan. This was the second time in the Spring of 2017 that Mackowiak found an excuse to come to Whelan's office. On one of the occasions Mackowiak quietly positioned himself immediately behind Whelan. Whelan was unaware of Mackowiak's presence until he suddenly began talking to Lt. Marunde in a loud voice, startling Whelan.

45. In or about mid-August of 2017 defendant Jackson came to the Daley Center in order to meet with the A.S.A defending this litigation in order to prepare for her deposition the following week. Prior to her meeting with counsel, Jackson came to the office where Whelan had a desk and stood in the general office area having a loud twenty minute conversation with Lt. Marunde, including discussion of preparation for her deposition in this case.

46. The actions of Mackowiak and Jackson as described in paragraphs 42 and 43 were intentionally calculated to harass, intimidate and discomfort Whelan.

47. On or about July 7, 2015 Bellettiere met with Mackowiak in Mackowiak's office in Markham. With the door open, Mackowiak, in a loud voice, attacked Whelan, describing her negatively to Bellettiere, freely using obscenities, including the "F" word. Mackowiak's tirade could be heard by sworn and unsworn staff outside of Mackowiak's office. Mackowiak's conduct violated the general orders, "conduct unbecoming," nevertheless Bellettiere allowed Mackowiak to continue his tirade without correcting or stopping him. No disciplinary action

was taken against Mackowiak. This was the second time to Whelan's knowledge that Mackowiak engaged in a loud, obscene tirade about Whelan. Shortly after the CPU was moved to Markham a custodian took it upon himself to close Mackowiak's door so that no one had to hear his tirade against Whelan.

48.     In or about June of 2015 Mackowiak wrote Whelan's name on the dry erase board in the Markham CPU with "2,014 demerits." When Whelan tried to laugh it off—calling the demerits "hearts and butterflies" that showed how much Mackowiak liked her. Kowalski responded "You think everybody likes you. Nobody likes you. Everybody hates you." No man has ever had demerits posted on the board by Mackowiak in other than single digits.

49.     At all relevant times hereto a code of silence existed at the Cook County Sheriff's Department whereby employees were afraid to complain about improper behavior by supervisors for fear that they would be retaliated against. Specifically, in the Markham civil process unit, defendants Mackowiak and Kowalski retaliated against employees by hiding their equipment and their paperwork in order to create the appearance that the individual violated procedures. For example, Orders of Protection which were priority items to be served, were hidden from the targeted employee so that it appeared the employee had failed to provide priority service. This type of retaliation was used against Whelan as well as other employees who were targeted for retaliation.

50.     Mackowiak, in particular, was protected when engaging in harassment and retaliation because of his close personal relationship with Chief Connelly. Mackowiak would constantly remind other employees that he was protected by Chief Connelly (they were Godparents to each other's children and stood up in each other's weddings) in order to discourage any complaints about Mackowiak's conduct.

<u>Count I – Gender Discrimination – Sexual Harassment-Hostile
Work Environment-–Title VII</u>

51.     Whelan repeats and realleges paragraphs 1-34 as though fully set out herein.

52.     Defendants Sheriff and Cook County willfully, intentionally, and with reckless indifference subjected Whelan to repeated and pervasive sex discrimination, harassment, and retaliation by her co-workers and her supervisors, despite Whelan's' federally protected rights.

53.     The acts of the Sheriff and Cook County were so pervasive, long standing, and ongoing that the onslaught of sex discrimination, harassment, and retaliation affected Whelan's ability to do her job, subjected her to unwarranted and inappropriate discipline, has negatively affected her opportunity to be selected for promotion to Lieutenant, and has affected her position as a Sergeant sheriff, her pay, and her satisfaction with her job.

54.     As a further result of the unlawful sex discrimination, harassment, and retaliation described above, Whelan has suffered a loss of income and benefits, incurred medical expenses, and experienced emotional pain and suffering, mental anguish, inconvenience and loss of enjoyment of life.

Wherefore, Whelan requests the following relief:

A.     A declaration by this Court that Whelan has been discriminated against in violation of Title VII;

B.     Compensation for all income and benefits lost as a result of the Sheriff's and Cook County's discriminatory acts;

C.     An award of damages as permitted by Section 1977A of the Civil Rights Act of 1991 in an amount to be determined by the jury;

D.     Both pre and post judgment interest on any damages awarded;

E.     An award of reasonable attorney's fees and costs;

F.      For such other relief as this Court deems just.

Count II – Retaliation—Title VII

55.     Whelan repeats and realleges paragraphs 1-40 as though fully set out herein.

56.     Defendants Sheriff and Cook County willfully, intentionally, and with reckless indifference subjected Whelan to repeated and pervasive retaliation by her co-workers and her supervisors, despite Whelan's' federally protected rights for complaining about the sex discrimination, harassment, and hostile work environment she was subjected to.

57.     The retaliatory acts of the Sheriff and Cook County were so pervasive, long standing, and ongoing that the onslaught of sex discrimination, harassment, and retaliation affected Whelan's ability to do her job, subjected her to unwarranted and inappropriate discipline, has negatively affected her opportunity to be selected for promotion to Lieutenant, and has affected her position as a Sergeant sheriff, her pay, and her satisfaction with her job.

58.     As a further result of the unlawful retaliation described above, Whelan has suffered a loss of income and benefits, incurred medical expenses, and experienced emotional pain and suffering, mental anguish, inconvenience, and loss of enjoyment of life.

Wherefore, Whelan requests the following relief:

A.      A declaration by this Court that Whelan has been discriminated against in violation of Title VII;

B.      Compensation for all income and benefits lost as a result of the Sheriff's and Cook County's discriminatory acts;

C.      An award of damages as permitted by Section 1977A of the Civil Rights Act of 1991 in an amount to be determined by the jury;

D.      Both pre and post judgment interest on any damages awarded;

E.      An award of reasonable attorney's fees and costs;

F.      For such other relief as this Court deems just.

<u>Count III – Violation of Equal Protection--§ 1983</u>

59.      Whelan repeats and realleges paragraphs 1-44 as though fully set out herein.

60.      Defendants Mackowiak, Kowalski, Halverson, Jackson, and Bellettiere intentionally subjected Whelan to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions and terms of her employment because of her gender.

61.      Defendants Mackowiak, Kowalski, Halverson, Jackson, and Bellettiere intentionally subjected Whelan to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions and terms of Whelan's employment, and by knowingly failing and refusing to protect her from such conditions.

62.      Defendants Mackowiak, Kowalski, Halverson, Jackson, and Bellettiere intentionally subjected Whelan to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions and terms of Whelan's employment, and by knowingly failing and refusing to protect her from such conditions, and then punishing Whelan when she attempted to mitigate and stop the discrimination by engaging in repeated and pervasive acts of retaliation.

63.      Defendants Mackowiak, Kowalski, Halverson, Jackson, and Bellettiere's actions against Whelan violated her Equal Protection right to be free from sexual harassment and gender discrimination under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

64.     Defendants failed to provide proper or adequate training to managers, supervisors, and employees to prevent sexual harassment.  Chief Joseph Bellettiere was a witness to Lt. Mackowiak's impermissible treatment of Sergeant Whelan and failed to take action to remedy the situation or ensure Mackowiak and his staff were properly trained.  Additionally, Deputy Chief Jackson was made aware of Defendants' discriminatory treatment toward Whelan and failed to take any action to discipline or properly train the staff.

65.     Defendants also failed to provide an adequate and meaningful complaint process for Whelan to voice her concerns and seek redress for the harassment and retaliation she suffered.  Investigators of misconduct failed to conduct meaningful interviews with all relevant individuals, including, but not limited to, Lt. Mackowiak.  Additionally, individuals interviewed were discouraged from disclosing information without first submitting the information to a superior officer, which suppressed the amount and nature of the information disclosed in said interviews, making the interviews a substanceless meeting rather than a meaningful investigatory inquiry.

66.     Defendants Sheriff, Cook County, Mackowiak, Kowalski, Halverson, Jackson, and Bellettiere's  acts were intentional, willful, and malicious, and/or in deliberate indifference for Whelan's rights as secured by the Fourteenth Amendment and 42 U.S.C. § 1983.

67.     Defendant Sheriff's, Cook County's, Mackowiak, Kowalski, Halverson, Jackson, and Bellettiere's actions in intentionally engaging in and condoning sex discrimination, harassment, and retaliation against Whelan and discriminating against her based on her gender caused Whelan to suffer great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, pecuniary losses, the loss of enjoyment of life and other damages.

Wherefore, Whelan demands judgment against the defendants, and each of them, in an amount in excess of One Hundred Thousand Dollars ($100,000.00) in compensatory damages, punitive damages against the individual defendants to punish them for their unlawful acts, plus reasonable attorneys' fees and costs.

<u>Count IV – Conspiracy</u>

68.    Whelan repeats and realleges paragraphs 1-53 as though fully set out herein.

69.    After Whelan publicly complained to OPR in July 2015, Mackowiak, Kowalski, Halverson, Jackson, and Bellettiere agreed, planned, plotted, and conspired to cause Whelan injury, to violate her rights under the Fourteenth Amendment, inflict emotional distress, and to injure and punish her for complaining of sexual harassment, gender discrimination, and a sexually hostile work environment by creating and fabricating alleged employment discipline infractions against her, falsifying employment charges, write ups, infractions, and making repasted and false allegations of unsatisfactory performance of her duties.

70.    Mackowiak, Kowalski, and Halverson openly and publicly, in front of sworn and civilian personnel, would continue to demean and insult Whelan, falsely accuse her of incompetence and lacking courage to "go out on the street," totally exclude her from the daily Sergeants meetings, and continue to obstruct Whelan's civil process document workload in order to make it impossible for her to perform her duties, create a pretext for discipline, drive her out of the civil process unit, and to keep her from being competitive for selection for promotion to Lieutenant.

71.    Defendants Jackson and Bellettiere agreed, planned, plotted, and conspired with Mackowiak, Kowalski, and Halverson, and ordered Whelan to report to the Daley Center for interrogation in early August 2015, only a few weeks after Whelan filed her OPR complaint, in

order to undergo aggressive questioning, in the absence of her Union representative, about her performance of duties as a Sergeant assigned to the CPU, about whether she was missing OC Spray during an August 5th, 2015 equipment inspection, and about whether she was overly exaggerating the discrimination, harassment, and maltreatment by defendants she had previously reported via her July 2015 OPR complaint. Defendants Jackson and Bellettiere, after being contacted by Mackowiak, ordered Whelan to participate in this interrogation in order to undercut the validity of her OPR complaint, make it impossible for her to perform her duties, and to create a pretext for discipline and keep her from being competitive for selection for promotion to Lieutenant.

72.     As a direct and proximate result of the foregoing intentional acts whose purpose and intent was to harm and injure Whelan, she actually suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, pecuniary losses, the loss of enjoyment of life, and other damages.

73.     Malice is the gist of the action.

Wherefore, Whelan demands judgment against the individual defendants Mackowiak, Kowalski, Halverson, Jackson, and Bellettiere, and each of them, in an amount in excess of One Hundred Thousand Dollars ($100,000.00) in compensatory damages, and punitive damages against the individual defendants to punish them for their misconduct, plus her costs.

<u>Count V – Intentional Infliction of Emotional Distress</u>

74.     Whelan repeats and realleges paragraphs 1-59 as though fully set out herein.

75.     The actions of Bellettiere, Jackson, Mackowiak, Kowalski, and Halverson were so extreme and so outrageous that no reasonable person should be required or expected to bear it or tolerate it.

76.     The actions of Mackowiak, Kowalski, and Halverson were calculated, designed, and intended to cause Whelan emotional harm, suffering, and injury.

77.     As a direct and proximate result of the foregoing intentional acts whose purpose and intent was to harm and injure Whelan, she actually suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, pecuniary losses, the loss of enjoyment of life, and other damages.   The level of emotional distress experienced by Whelan has necessitated medical care.

78.     Malice is the gist of the action.

Wherefore, Whelan demands judgment against the individual defendants Mackowiak, Kowalski, and Halverson, and each of them, in an amount in excess of One Hundred Thousand Dollars ($100,000.00) in compensatory damages, and punitive damages against the individual defendants to punish them for their misconduct, plus her costs.


### Count VI – 745 ILCS 10/9-102 – State Law Claim

79.     Plaintiff repeats and realleges paragraphs 1- 64 as though fully set out herein.

80.     At all relevant times hereto there exists a certain Illinois statute, to wit, 745 ILCS 10/9-102, which states in pertinent part:

> A local entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article.

81.     The defendant Cook County, by virtue of the aforesaid statute, is required by Illinois law to pay any judgment entered against defendants Sheriff, Mackowiak, Kowalski, Halverson, Jackson, and Bellettiere for compensatory damages, attorneys' fees, and costs.

24

Wherefore, Cindy Whelan demands judgment against the defendant, Cook County, Illinois, in an amount equal to the damages awarded her under Counts I, II, III, and IV, plus costs.

<u>Rule 38 Jury Demand</u>

Pursuant to Rule 38, the plaintiff demands trial by jury for all claims triable by jury.

November 22, 2017

Cindy Whelan, plaintiff


By: <u>/s Craig D. Tobin</u>
One of her attorneys

Craig D. Tobin
Sean M. Sullivan
Tobin & Muñoz, L.L.C.
Attorneys for Mary K. Whelan
Three First National Plaza, #1950
Chicago, IL 60602-4298
Office (312) 641-1321
Facsimile (312) 641-5220
Email  ctobin@barristers.com
           ssullivan@barristers.com